CHAMBERS OF
GINA L. SIMMS
UNITED STATES MAGISTRATE JUDGE
MDD_GLSChambers@mdd.uscourts.gov

U.S. COURTHOUSE
6500 CHERRYWOOD LANE
GREENBELT, MARYLAND 20770
(301) 344-0627



August 5, 2019

Stephen F. Shea, Esq.
801 Roeder Road, Suite 550
Silver Spring, MD 20910

Cassia W. Parson, Esq.
Special Assistant United States Attorney
Social Security Administration, Ofc. Of
General Counsel
6401 Security Blvd., Room 617
Baltimore, MD 21235

Subject:   *Sherlene S. v. Saul*[1]
           Civil No.: 8:18-cv-01575-GLS

Dear Counsel:

Pending before this Court are cross-motions for summary judgment. (ECF Nos. 12, 15). The Court must uphold the Social Security Administration ("SSA" or "the Agency")'s decision if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3) (2016); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial evidence rule "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Chater*, 76 F.3d at 589. This Court shall not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the SSA. *Id.* Upon review of the pleadings and the record, the Court finds that no hearing is necessary. Local Rule 105.6. For the reasons set forth below, both Motions are DENIED and the SSA's judgment is remanded for further consideration.

**I.  BACKGROUND**

Plaintiff filed claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") on November 13, 2014, alleging an onset of disability on March 15, 2013. (Tr. 13). Plaintiff's application was denied initially on February 25, 2015, and upon reconsideration on June 8, 2015, by the SSA. (*Id.*). On July 7, 2015, Plaintiff requested a hearing, which was conducted on March 21, 2017 before an Administrative Law Judge ("ALJ").[2] (*Id.*). On

---

[1] On June 17, 2019, Andrew Saul was sworn in as Commissioner of the Social Security Administration. Commissioner Saul is substituted as the Defendant pursuant to Fed. R. Civ. P. 25(d).

[2] A video hearing was held. "The [Plaintiff] appeared in Charlotte Hall, MD, and the [ALJ] presided over the hearing from Norfolk, VA." (Tr. 13).

June 8, 2017, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act (the "Act") during the relevant period, which was November 13, 2014 to June 8, 2017.[3] (Tr. 10-21). On March 30, 2018, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final and reviewable decision of the SSA. (Tr.1-5).

## II.   ANALYSIS PERFORMED BY THE ADMINISTRATIVE LAW JUDGE

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is deemed to have a disability if her "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work . . . which exists in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A).

To determine whether a person has a disability, the ALJ engages in the five-step sequential evaluation process set forth in 20 C.F.R. §§ 415.1520(a)(4)(i)-(v); 416.920. *See e.g., Bowen v. Yuckert,* 482 U.S. 137, 140-42 (1987); *Mascio v. Colvin,* 780 F.3d 632, 634-35 (4th Cir. 2015). The steps used by the ALJ are as follows: step one, assesses whether a claimant engaged in substantial gainful activity since the alleged disability onset date; step two, determine whether a claimant's impairments meet the severity and durations requirements found in the regulations; step three, ascertain whether a claimant's medical impairment meets or equals an impairment listed in the regulations (the "Listings"). If the first three steps are not conclusive, the ALJ assesses the claimant's Residual Functional Capacity ("RFC"), i.e., the most the claimant could do despite her limitations, through consideration of claimant's "'medically determinable impairments of which [the ALJ is] aware', including those not labeled severe at step two." *Mascio*, 780 F.3d at 635 (quoting 20 C.F.R. § 416.945(a)). At step four, the ALJ analyzes whether a claimant could perform past work, given the limitations caused by her impairments; and at step five, the ALJ analyzes whether a claimant could perform any work. At steps one through four, it is the claimant's burden to show that he or she is disabled. *See Monroe v. Colvin*, 826 F.3d 176, 179-80 (4th Cir. 2016). If the ALJ's evaluation moves to step five, the burden then shifts to the SSA to prove that a claimant has the ability to perform work and, therefore, is not disabled. *Id*. at 180.

Here, the ALJ found that Plaintiff suffered from the following severe impairments: asthma and allergies. (Tr. 15). Despite these impairments, the ALJ determined that Plaintiff retained the RFC to:

> perform medium work . . . except the [Plaintiff] needs to avoid climbing ladders, ropes and scaffolds. She can frequently perform other postural movements. She needs to avoid even moderate exposure to extreme temperatures, humidity and respiratory irritants. (Tr. 16) (emphasis supplied).

---

[3] "[Plaintiff] amended her alleged onset date to December 11, 2014. The record was left open for the submission of additional medical evidence. Exhibits . . . were submitted after the hearing and were considered in the following decision." (Tr. 13).

At the hearing before the ALJ, a vocational expert ("VE") testified that a hypothetical individual with the same age, education, and work experience as Plaintiff and with her RFC could perform prior work. (Tr. 49). The VE testified that the hypothetical person could perform Plaintiff's prior work as a teacher assistant. (*Id.*). Next, the VE was asked whether the hypothetical person, with similar respiratory ailments as Plaintiff, and limited to light work, could "perform the [Plaintiff's] past work as . . . performed in the national economy." (*Id.*). The VE responded, "yes." (*Id.*). However, the VE also testified that a person "off task" between 10 and 15 percent of an eight-hour work day could not sustain competitive employment. (Tr. 50). The ALJ ultimately found that Plaintiff could perform her past work generally, as long as it was not in a building that had mold (which exacerbated her asthma). (Tr. 21). And, as stated above, the ALJ found that she had the RFC to perform medium work. (Tr. 16).

### III. DISCUSSION

In requesting summary judgment, Plaintiff advances two contentions. First, that the ALJ erroneously assessed her RFC by ignoring the fact that she had to use a nebulizer three times per day, for at least 30-35 minutes each time, throughout an eight-hour work day. (ECF No. 12-1, p. 5). Put another way, the ALJ failed to explain how Plaintiff could work given that this health limitation meant that she was "off task" for more than 18 percent of the day. (*Id.*, pp. 5-6). Second, Plaintiff contends that the ALJ erred by finding that her vascular condition was not severe, and by failing to include a limitation in her RFC specifying how this condition impacted her ability to walk and stand. (ECF No. 12-1, p. 6). In response, the Agency argues that substantial evidence exists to support the ALJ's findings that Plaintiff's impairments were not severe, and that she could perform medium exertional work, as long as she was not exposed to "respiratory irritants and extreme temps and humidity." (ECF No. 15-1, p. 12).

To determine an individual's RFC, the ALJ determines the capacity that the individual possesses despite limitations caused by impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The RFC must be based on all evidence in the record, and can include "a claimant's own description of limitations arising from alleged symptoms." *Riggs v. Berryhill*, No. 4:16-CV-11-F, 2017 WL 9478480, at *3 (E.D.N.C. Mar. 2, 2017) (citing to 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3)).

When assessing a claimant's RFC, the law requires an ALJ to consider all of the claimant's medically determinable impairments, including any medically determinable impairments that are not "severe," and also whether there are cumulative effects from those impairments that impact the disability determination. *See* 42 U.S.C. § 423(d)(2)(B). The ALJ must also consider treatment evidence when arriving at a RFC, "including restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)." SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996).

Moreover, an ALJ's RFC determination should include a "narrative discussion describing how the evidence supports each conclusion citing specific medical facts . . . and nonmedical evidence." *Id.* at *7. The Fourth Circuit has held that a "proper RFC analysis has three components:

*Sherlene S. v. Saul*
GLS-18-1575
August 5, 2019

(1) evidence, (2) logical explanation, and (3) conclusion. The second component, the ALJ's logical explanation is just as important as the other two." *Thomas v. Berryhill*, 916 F.3d 307, 312 (4th Cir. 2019). *See also Petry v. Comm'r, Soc. Sec. Admin.*, No. SAG-16-464, 2017 WL 680379, at *2 (D.Md. Feb. 21, 2017) (ALJ should build "an accurate and logical bridge from the evidence to his conclusion.").

The Court will first address Plaintiff's second issue. Plaintiff asserts that the ALJ failed to adequately address the Plaintiff's lower extremity vascular condition. (ECF No. 12-1, p. 6). Specifically, Plaintiff argues that "the [ALJ] determined that the Plaintiff's vascular condition was non-severe . . . placed no limitations upon Plaintiff's abilities to stand and walk, and determined, without explanation, that her vascular condition was 'managed medically.'" (*Id.*). The SSA contends that the ALJ considered all medical and non-medical evidence, including the records from the vascular group, cardiologist, primary care physician, and Plaintiff's testimony and determined that none of the evidence supported the Plaintiff's claims. (ECF No. 15-1, p. 12). In *Gross v. Heckler*, 785 F. 2d 1163 (4th Cir. 2015), the Fourth Circuit held that there must be substantial evidence to support the decision that a claimant's impairments are not severe, that the claimant is capable of gainful employment, and that the claimant is not entitled to disability benefits. In the instant case, Plaintiff does not set forth a compelling argument and fails to articulate what limitations the ALJ should have imposed. In addressing Plaintiff's lower extremity vascular condition, the ALJ determined, based on Plaintiff's medical records, that this condition was not severe because it was "managed medically, and . . . amendable to proper control by adherence to recommended medical management and medications compliance." (Tr. 16). In addition, because "no aggressive treatment was recommended or anticipated" for this condition, amongst others, the ALJ found that Plaintiff's lower extremity vascular condition was not severe. (*Id*.). Finding that the ALJ explained why Plaintiff's lower extremity vascular condition was not severe, I find that substantial evidence exists to support the ALJ's determination.[4]

Next the Court will address Plaintiff's first allegation. Plaintiff avers that the ALJ, in assessing the Plaintiff's RFC, failed to consider or address her nebulizer use throughout the day. (ECF No. 12-1, p. 5). Specifically, that her use of the nebulizer three times per day impacts her ability to be "on task" and employed. (*Id.*). The SSA counters that the "ALJ reviewed the record and evidence as whole, including Plaintiff's testimony regarding her need to use the nebulizer multiple times throughout the day," and that her medical providers recommended and gave her conservative treatment. (ECF No. 15-1, p. 12).

In *Stitely v. Comm'r, Soc. Sec. Admin*., No. SAG-14-144, 2014 WL 5834700, at *2 (D.Md Nov. 10, 2014), a case involving a claimant's nebulizer use throughout the day, the court determined that substantial evidence supported the ALJ's decision that Plaintiff would be "off task" 10 percent of a work day. In that case, Stitely's medical records revealed the frequency in which he used the nebulizer. *Id*. The court determined that because the ALJ's hypothetical took into account that Stitely would be "off task" 10 percent of the day due to his symptoms, substantial evidence existed to support the ALJ's RFC findings. *Id*.

---

[4] Moreover, the ALJ discussed that the "venous doppler scan revealed no evidence of deep venous thrombosis," and cited medical evidence. (Tr. 18).

*Sherlene S. v. Saul*
GLS-18-1575
August 5, 2019

Here, Plaintiff's medical records reflect that she required nebulizer treatments. (Tr. 521, 761). Specifically, in 2013, Plaintiff's medical records demonstrates that she was to use her nebulizer three times per day, i.e., once every eight hours. (Tr. 521). In 2016, Plaintiff's medical records revealed that she was instructed to use her nebulizer every four to six hours, as needed. (Tr. 761). Unlike in *Stitely*, where the ALJ considered claimant's "off task" percentage based on the claimant's nebulizer use, the record here is absent of the ALJ's consideration of Plaintiff's nebulizer use and whether such use results in her being "off task." I note, however, that Plaintiff's counsel raised the issue and asked the VE what impact being "off task" between 10-15 percent of the day would have on Plaintiff's ability to be employed. The VE responded, "that would eliminate competitive employment." (Tr. 50). Because the ALJ failed to explain in the RFC findings what impact, if any, Plaintiff's nebulizer use would have on her ability to remain "on or off task," as well as the impact on her ability to be employed, remand is warranted. On remand, the ALJ should address the evidence concerning Plaintiff's use of her nebulizer, including her testimony, as well as the VE's testimony, and what impact this use may have on her "on and off task" percentage. In explaining his findings, the ALJ should build "an accurate and logical bridge from the evidence to [the] conclusion." *See Petry*, 2017 WL 680379, at *2.

## IV. CONCLUSION

In remanding for additional analysis, I express no opinion as to whether the ALJ's finding that Plaintiff is not entitled to benefits is correct.

For the reasons set forth above, Plaintiff's Motion for Summary Judgment, (ECF No. 12), is DENIED and Defendant's Motion for Summary Judgment, (ECF No. 15), is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED IN PART due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The Clerk of the Court is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Sincerely,

/s/
The Honorable Gina L. Simms
United States Magistrate Judge